Filed 2/10/22  In re M.M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B312504 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 21CCJP00379 |
| Plaintiff and Respondent, | |
| v. | |
| J.L. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge. Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant J.L.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant G.M.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

G.M. (father) and J.L. (mother) appeal from an order finding dependency jurisdiction under Welfare & Institutions Code section 300, subdivisions (a) and (b), over their 18-month-old daughter (the minor).[1] Father also challenges the order removing the minor from his custody.

Substantial evidence supports the court's jurisdictional finding on the basis of domestic violence between father and mother. The incident that brought the family to the attention of the Department of Children and Family Services (Department) was a confrontation between the parents in which father threw a large object against the wall, punched a wall, pinned mother up against a wall, and then slapped her in the face—all while mother was holding their infant daughter. That incident, as well as evidence that prior instances of domestic violence had occurred between mother and father, support the court's adjudication and removal orders. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Mother and father live together and have one child together (the minor). When the family first came to the attention of the Department the minor was six months old.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

The Department received multiple referrals about a domestic violence incident that took place between mother and father on January 3, 2021. On that day, father left the family home for approximately one hour to pick up food. Mother stayed at home with the minor. While father was gone, mother (who is a recovering alcoholic) drank six ounces of wine. Mother disclosed her alcohol consumption to father when he returned, and he became upset. Father kicked or threw the minor's plastic walker toward a wall, pushed mother toward the wall, and slapped mother in the face with his hand. Mother was holding the minor during the confrontation.

The following day, law enforcement received a request for a wellness check for mother from mother's adult daughter who lives in another state. Officers arrived at the family home and arrested father for physically assaulting mother. Mother told officers that father had been very angry and had screamed at her, pushed her, and hit her in the face. Although mother showed no signs of intoxication, she was "acting bizarre" and said she had ingested some psychotropic medications prescribed to her to treat depression. Mother was transported to the hospital and a friend of mother's was called to care for the minor. Mother's adult daughter subsequently assumed the minor's care.

During an interview with a Department social worker, mother denied that father slapped or hit her and instead stated that father was attempting to grab the minor from mother's arms and "his hand accidentally brushed against her and the draw string of her hoodie hit her in the face." Mother admitted that father threw the walker against the wall and said that father punched a wall after mother refused to give the minor to him. Although mother denied prior instances of domestic violence,

mother's adult daughter stated that previous incidents of domestic violence had occurred between mother and father. Specifically, she said mother told her in the past that father "hits, pushes and hold[s] onto her when he gets upset with her." She also confirmed that mother has a long history of alcohol abuse.

For his part, father denied hitting mother and forcibly taking the minor from mother. He said he was upset that mother was drinking and threw the walker at the wall, away from mother and the minor. He also hit the wall in the hallway several times but did not hit the wall hard and the social worker observed that the wall was undamaged. Father said that when he took the minor from mother's arm, the zipper on mother's hoodie hit her in the face but mother was uninjured. He denied any prior incidents of domestic violence in which he was the aggressor but stated that "mother does get aggressive when she drinks and she has assaulted him in the past."

Mother agreed to enroll in a residential treatment program to address alcohol abuse. She had previously completed three outpatient programs and had completed a residential treatment program in 2019, after which she had been sober until November 2020. She entered a 90-day residential program on January 15, 2021 and took custody of the minor at the facility on January 20, 2021. The minor was subsequently detained from both parents and placed with the paternal grandmother.

The Department filed a petition under section 300, subdivisions (a) and (b), on January 26, 2021. The petition included identical counts (count a-1 and count b-1) under subdivisions (a) and (b) relating to the domestic violence incident on January 3, 2021. The petition set forth two additional counts under section 300, subdivision (b). Count b-2 related to mother's

alcohol abuse and resultant inability to care for the minor, who was then seven months old. Count b-3 related to mother's "history of mental and emotional problems, including depression and anxiety[.]"

At the detention hearing on January 29, 2021, the court found a prima facie case for dependency jurisdiction existed and ordered temporary placement and custody vested in the Department. The court ordered the minor placed with mother, conditioned on mother's participation in the residential rehabilitation program and testing negative for all substances. The court further ordered monitored visitation for father three times weekly for three hours, with discretion to liberalize to unmonitored, overnight, and weekend visitation.

The Department submitted a jurisdiction and disposition report on April 6, 2021. At that time, mother had successfully completed the first residential program and had moved to a sober living house with the minor. Mother was actively participating in the rehabilitation program, had been testing negative for all substances, and was attentive to the minor. No problems were noted. Father had enrolled in and was attending parenting and anger management classes.[2] Mother and father denied all counts in the dependency petition and continued to deny a history of domestic violence.

---

[2] The District Attorney's office dropped the assault charge due to "lack of sufficient evidence."

The court conducted the adjudication hearing on April 26, 2021, and sustained the following jurisdictional allegation under section 300, subdivisions (a) and (b):

Counts a-1, b-1: "[Mother and father] have a history of engaging in violent altercations in the presence of the child. On [01/03/2021], the father pushed the mother while the mother was holding the child and restrained the mother against a wall. The father struck the mother's face. On prior occasions, the father has struck, pushed, and restrained the mother. The mother failed to protect the child in that the mother allowed the father to reside in the child's home and have unlimited access to the child. Such violent conduct by the father against the mother and the mother's failure to protect the child, endangers the child's physical health and safety, creates a detrimental home environment, and places the child at risk of serious physical harm, damage, danger, and failure to protect."

The court sustained an additional allegation under section 300, subdivision (b):

Count b-2: "[Mother] has a history of substance abuse and is a current abuser of alcohol, which renders the mother incapable of providing regular care for the child. On prior occasions, the mother was under the influence of alcohol, while the child was in the mother's care and supervision. The child is of such a young and tender age as to require constant care and supervision[.]"

The court dismissed count b-3, which related to mother's mental health.

As to disposition, the court removed the minor from father and ordered the minor placed with mother under the Department's supervision. Mother's case plan required a full drug

6

and alcohol recovery program with aftercare, random weekly drug and alcohol testing, and participation in a 12-step program. Mother was also required to reside in a residential locked treatment facility for 90 days and attend individual counseling to address case issues including domestic violence. Father's case plan required him to participate in a 26-week domestic violence course and to participate in individual counseling. The court ordered monitored visitation for father, three times weekly for three hours or, if in-person visitation was not possible due to restrictions relating to the Covid-19 pandemic, father could visit with the minor virtually for 20 minutes daily.

Both father and mother appeal.

## DISCUSSION

Father contends that the jurisdictional findings under section 300, subdivisions (a) and (b), are not supported by substantial evidence. Mother joins in those arguments. Further, father argues the court erred in removing the minor from his custody. We conclude the court's finding of dependency jurisdiction based on domestic violence (count b-1) is supported by substantial evidence. The court's findings on that point also support its order removing the minor from father's custody.

### 1.     Standard of Review

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. … "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and

7

credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence ... such that a reasonable trier of fact could find [that the order is appropriate]." ' " ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Substantial evidence is " 'evidence which is reasonable, credible, and of solid value[.]' " (*In re I.C.* (2018) 4 Cal.5th 869, 892.) Finally, and with respect to the court's removal order, which requires proof of substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minors by clear and convincing evidence (§ 361, subd. (c)), we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

## 2. Substantial evidence supports the court's jurisdictional finding under section 300, subdivision (b), based on domestic violence.

Father contends none of the jurisdictional findings under section 300 are supported by substantial evidence. We conclude the court's finding of dependency jurisdiction under section 300, subdivision (b), based on domestic violence is supported by substantial evidence.[3]

---

[3] Because we affirm the jurisdiction finding and removal order on the basis of domestic violence, we do not address the parties' challenges to

8

### 2.1. Legal Principles

Under section 300, subdivision (a), a juvenile court may exercise dependency jurisdiction if the " 'child has suffered, or *there is a substantial risk that the child will suffer*, serious physical harm or illness, as a result of the failure or inability of his or her parent … to adequately supervise or protect the child … .' " (See *In re E.E.* (2020) 49 Cal.App.5th 195, 205.) "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215–1216.)

---

the alternative bases for jurisdiction. (See, e.g., *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [noting that "an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence"].) Although mother expressly challenges the court's domestic violence finding under section 300, subdivision (a), she "acknowledges family violence in the child's household, like that alleged in the instant case, may have supported a finding pursuant to subdivision (b)(1) of section 300[.]" That is, unlike the parent in *In re Drake* (2012) 211 Cal.App.4th 754, 764, mother would still be an "offending parent" even if we reversed the court's alternative bases for jurisdiction. Further, although mother contends she will be prejudiced unless we reach the merits of her challenge to the court's finding under section 300, subdivision (a), the potential adverse consequences mother cites are speculative.

Domestic violence is a valid basis for the assertion of dependency jurisdiction over a child. "Domestic violence is always a serious concern, and any propensity to it is certainly highly relevant as regards children's welfare." (*Guardianship of Simpson* (1998) 67 Cal.App.4th 914, 938.) Where, as here, the children have not suffered serious physical harm or illness as a result of domestic violence, the jurisdictional allegation must be supported by evidence that the violence is ongoing, and the children are at substantial risk of such harm at the time of the jurisdiction finding. (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194–195.)

Our courts have all too frequently explained the relationship between section 300, subdivision (b), and domestic violence: " '[D]omestic violence in the same household where children are living … is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.' [Citation.] Children can be 'put in a position of physical danger from [spousal] violence' because, 'for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg … .' [Citation.] [¶] 'Both common sense and expert opinion indicate spousal abuse is detrimental to children.' (*In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5; see *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562; Fields, *The Impact of Spouse Abuse on Children and Its Relevance in Custody and Visitation Decisions in New York State* (1994) 3 Cornell J.L. & Pub. Pol'y 221, 228 ['Studies show that violence by one parent against another harms children even if they do not witness it.']; Cahn, *Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions* (1991) 44 Vand. L.Rev. 1041,

1055–1056 ['First, children of these relationships appear more likely to experience physical harm from both parents than children of relationships without woman abuse. Second, even if they are not physically harmed, children suffer enormously from simply witnessing the violence between their parents. … [¶] Third, children of abusive fathers are likely to be physically abused themselves.' (Fns. omitted.)].)" (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on an unrelated point in *Conservatorship of O.B., supra,* 9 Cal.5th at p. 1010, fn. 7.)

Finally, our courts have frequently observed that " '[p]ast violent behavior in a relationship is "the best predictor of future violence." Studies demonstrate that once violence occurs in a relationship, the use of force will reoccur in 63% of those relationships. … Even if a batterer moves on to another relationship, he will continue to use physical force as a means of controlling his new partner.' (Comment, *Beating Again and Again and Again: Why Washington Needs a New Rule of Evidence Admitting Prior Acts of Domestic Violence* (2000) 75 Wash. L.Rev. 973, 977–978, fns. omitted.)" (*In re E.B., supra,* 184 Cal.App.4th at p. 576; *In re R.C.* (2012) 210 Cal.App.4th 930, 941–942.)

### 2.2. Analysis

The parents contend no substantial evidence supports the court's jurisdiction finding based on domestic violence. We disagree.

As noted, the minor was not injured during the incident on January 3, 2021. Accordingly, to support jurisdiction under section 300, subdivision (b), the court had to find that the minor was at substantial risk of serious physical harm. Several factors support the court's decision. First, notwithstanding the parents' repeated denials, there was evidence that past incidents of

11

domestic violence had occurred. Specifically, mother's adult daughter told a Department social worker that mother told her in the past that father "hits, pushes and hold[s] onto her when he gets upset with her." Thus, the incident on January 3 was not an isolated incident but was rather part of a pattern of domestic violence which, as we have said, may be a harbinger of future violence in the home.

Second, as discussed, the January 3 incident between father and mother occurred while mother was holding the minor in her arms and thereby placed the minor directly in harm's way. Such conduct, particularly involving an infant, could easily have injured the child. The parents attempt to sidestep this issue by asserting that they "did not agree father intentionally slapped mother's face at the end of the incident." In doing so, the parents invite us to depart from the substantial evidence standard of review which, as we have said, requires us to consider whether there is any substantial evidence, contradicted or uncontradicted, to support the court's decision. (See, e.g., *In re R.T.* (2017) 3 Cal.5th 622, 633.) Mother's statement to law enforcement, in which she said that father slapped her in the face, is sufficient to support the court's domestic violence finding.

Third, the court observed that the parents appeared to minimize the seriousness of the domestic violence incident, noting that such minimization is a cause for concern because "[o]ne cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) The parents respond that their commitment to participate in programs such as parenting and domestic violence courses will ensure that no further incidents of domestic violence will occur and demonstrates that they are not in denial about the seriousness of

the incident. Certainly, a parent's willing participation in the court's case plan is a positive sign. But real change takes time. The court did not err in concluding that the parents' efforts had not yet ripened into real change. (Cf. *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days of sobriety not enough to demonstrate changed circumstances].)

### 3.    Substantial evidence supports the removal order.

Father also argues the court erred in removing the minor from his custody. We disagree.

Removing a child from a parent's custody is a matter of last resort. Accordingly, section 361, subdivision (c), limits " 'the court's authority to restrict a parent's rights following the exercise of dependency jurisdiction.' " (*In re S.R.* (2020) 48 Cal.App.5th 204, 218–219.) The provision states in pertinent part: "A dependent child shall not be taken from the physical custody of his or her parents … with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances[:] … [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor [was] returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody. …" (§ 361, subd. (c)(1).) As noted, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high

13

probability demanded by this standard of proof." (*Conservatorship of O.B., supra,* 9 Cal.5th at p. 1005.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor[s] and (2) potential detriment to the minor[s] if [they] remain[ ] with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The juvenile court may consider the parent's past conduct as well as the present circumstances. (See, e.g., *In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

As discussed *ante*, father was the aggressor in the domestic violence incident on January 3, 2021. Mother also stated that father was prone to "fits of rage." Father's conduct on January 3, 2021—when he pushed mother against the wall and slapped her in the face while she was holding the infant— demonstrates that he can be volatile and aggressive, even where such actions directly endanger the minor. And the fact that the minor is an infant only intensifies the concern that violent conduct in her proximity could result in serious injury to her.

Father suggests that less intrusive alternatives exist and therefore the court should not have removed the minor from his custody. For example, father notes that he was "cooperating with the Department, he was already established in programs, and he was willing to continue in any additional programs," and therefore conditioning custody on continued compliance with those programs was an available alternative to removal. Similarly, father contends "there could have been an order for unannounced home inspections by the social worker and [the

14

minor's] attorney." None of these measures, however, could prevent injury to the minor that might result from a sudden, violent outburst.

Father analogizes the present case to *In re Basilio T.* (1992) 4 Cal.App.4th 155, a case in which the court of appeal reversed a removal order for lack of substantial evidence. There, after affirming the jurisdictional findings removing two young children from parents Basilio and Marianne, the court emphasized the heightened burden of proof at the dispositional stage and summarized the scant evidence offered by the agency as follows: "the September 6, 1990, and October 16, 1990, incidents[4]; the couple's previous history of involvement with child protective services and violence; reports by neighbors of Marianne screaming at the minors and hitting them; and the social worker's interviews with the minors, who said they observed Marianne and Basilio fighting. We have already remarked on the skimpy nature of the information in the social study report concerning the couple's previous history of violence. We also note the reports by the complaining neighbors were at least double hearsay and contradicted by a live witness, whom the trial court explicitly found credible. While [one child] was found not

---

[4] Little evidence is given about the two incidents. The court stated only that on September 6, 1990, "police were called to investigate a report of an assault with a knife involving Marianne and Basilio. Marianne decided not to press charges." As for the other incident, Marianne told officers that "Basilio had struck her and forced her out of their home. According to the police report, police found Marianne outside the apartment naked; however, a neighbor testified that Marianne was wearing clothes and Basilio testified she was wearing a robe." Again, Marianne declined to press charges. (*In re Basilio T., supra*, 4 Cal.App.4th at p. 160.)

qualified to testify, [the other child] basically recanted much of what he told the social worker. That leaves the two incidents of domestic violence in which the police were called. While these incidents presumably occurred in or near the minors' presence, it is significant that neither incident directly affected either minor physically, i.e., the adults were fighting with each other and not directing their anger at the minors or abusing them. In fact, no evidence whatsoever was presented that the minors were harmed physically during the incidents that led to this proceeding. In sum, we find there was not substantial evidence to uphold a finding under section 361, subdivision (b)(1), under the requisite clear and convincing standard." (*Id*. at pp. 170–171.) The court stated further that in light of the evidence, the case was "simply not such an extreme case to warrant removal." (*Id*. at p. 171.)

*In re Basilio T*. is not analogous and is therefore of no assistance to father. In that case, the court considered two instances of domestic violence but had little information about the nature of the incidents because Marianne elected not to press charges. In the present case, however, there is substantial evidence that father threw or kicked the minor's walker against a wall, punched a wall, pushed mother against the wall, and slapped her in the face—all while mother was holding the minor in her arms. Further, and unlike *In re Basilio T*., where it was unknown whether the children were near the parents while they were fighting, here the parents admit that mother was holding the minor in her arms during the January 3 incident and that the minor began to cry as the situation escalated. Father also notes that the court in *In re Basilio T*. emphasized that the children did not suffer any physical harm during the parents' fighting. But as we have said, actual harm to a child is not necessary if there is a

16

substantial risk of serious harm in the future, as there is in the present case.[5]

In sum, and for the reasons stated, substantial evidence supports the court's removal order.

## DISPOSITION

The adjudication and disposition orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

                                    LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


LIPNER, J.*

---

[5] For this reason, father's citation to *In re Heather A.*, *supra*, 52 Cal.App.4th 183, is also unavailing.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.